**Appeal No. 15-5113**

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

R. DANE SHARP INDIVIDUALLY AND ON BEHALF OF ALL
SIMILARLY SITUATED EMPLOYEES

Plaintiffs-Appellants,

v.

CGG LAND (U.S.) INC.

Defendant-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
THE HONORABLE CLAIRE EAGAN PRESIDING
DISTRICT COURT CASE NO. 4:14-CV-00614-CVE-TLW

---

**BRIEF OF APPELLEE CGG LAND (U.S.) INC**

---

ORAL ARGUMENT NOT REQUESTED

Laurence E. Stuart
Hollie L. Reiminger
**STUART PC**
712 Main, Suite 1100
Houston, Texas  77002
Telephone: 713.337.3750
Facsimile:  713.481.6320
Email: lstuart@stuartpc.com
Email: heiminger@stuartpc.com

## **CORPORATE DISCLOSURE**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for appellee CGG Land (U.S.) Inc. certifies the following:

The following are not direct parties in this appeal but do have some interest in or a relationship with the litigation or the outcome of the litigation, are noted below. *See* 10th Cir. R. 46.1(D).

1.    CGG Services (U.S.) Inc. – Parent

2.    CGG Holdings (U.S.) Inc. – Grandparent

3.    CGG Holding B.V. – Great grandparent

4.    CGG SA – Great great grandparent

CGG SA is a publicly traded company that indirectly owns CGG Land through subsidiary companies.

ii

## **TABLE OF CONTENTS**

Table of Authorities ...................................................................................v

I.    Statement of Prior Related Appeals ...........................................vii

II.   Jurisdictional Statement .................................................................1

III.  Statement of the Issues Presented for Review ...........................1

IV.   Statement of the Case ....................................................................2

V.    Statement of the Facts ...................................................................3

    A.    The Relevant Undisputed Facts ..........................................3

     1.    Plaintiff Dane Sharp ....................................................3

     2.    The Opt-In Plaintiffs ....................................................4

     3.    The "Hot Shot" Per Diem Payments ..........................5

     4.    Overtime Pay ................................................................6

    B.    Relevant Procedural History of the Case ..........................7

VI.   Summary of Argument ................................................................10

VII.  Standards of Review ....................................................................11

VIII. Argument and Authorities ..........................................................11

    A.    The District Court's Decisions Were Proper and
        Plaintiffs Have Failed to Demonstrate Otherwise

        ..................................................................................11

     1.    The District Court Correctly Determined that the "Hot Shot"
         Payments Fit Within the FLSA's Regular Rate Exclusions .......12

        a.    The Fair Labor Standards Act Excludes Travel
          Expenses From the Regular Rate Calculation......................... 12

        b.    The "Hot Shot" Per Diem Payments Were Reasonable
          Approximations of Meal Expenses Incurred by
          Plaintiffs While Away From Home on
          Defendant's Business.................................................................13

      c.  The "Hot Shot" Per Diem Payments Were Excludable
From the Regular Rate Under Section 207(e)(2) of
the FLSA Because the Meal Expenses Incurred
Were For Defendant's Benefit and in Furtherance
of Defendant's Interests................................................14

    2.  Plaintiffs' Opening Brief Misstates Applicable
Legal Standards and Fails to Identify Any Legal
Support For Plaintiffs' Interpretation of Section 207(e)............20

      a.  Plaintiffs' Opening Brief States Incorrect
Legal Standards.............................................20

      b.  Plaintiffs' Unprecedented and Unsupported
Interpretation of the Term "Traveling"...................22

      c.  Plaintiffs' Claim That Meal Expenses Are
Always For the Benefit of the Employee
Has No Basis in Law.......................................24

      d.  There is No Factual Basis for Plaintiffs'
Argument That "Hot Shot" Per Diem Payments
Were Intended to Be Compensation......................28

  B.  Defendants Preserved Their Defenses, Including the MCAE......30

  1.  Defendant Provided the Requisite Notice of Its
Affirmative Defenses In Accordance with Rule 8(c)
and Applicable Case Law..................................31

  2.  Plaintiffs' Remaining Arguments Did Not
and Do Not Support Their Requested Waiver Finding............35

IX.  Conclusion....................................................39

Certificate of Compliance with Rule 32(a)......................40

Certificate of Digital Submission..............................41

Certificate of Service.........................................42

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acton v. City of Columbia*, No. 03-4159-CV, 2004 U.S. Dist. LEXIS 19004
  (W.D. Mo. Sept. 10, 2004) ............................................................. 17, 18
*Ball  Corp. v. Xidex Corp.*, 967 F.2d 1440 (10th Cir. 1992) ...................................32
*Baum v. Faith Technologies, Inc.,* No. 10-CV-0144-CVE-TLW,
  2010 U.S. Dist. LEXIS 56704 *4 (N.D. Okla. June 9, 2010) .............................31
*Berry v. Excel Group, Inc.*, 288 F.3d 252 (5th Cir. 2002) ........................... 16, 17, 18
*Brennan v. Padre Drilling Co., Inc.*, 359 F. Supp. 462 (S.D. Tex. 1973)...............17
*Carpenter v. Boeing Co.*, 456 F.3d 1183 (10th Cir. 2006) ........................................11
*Chavez v. City of Albuquerque*, 630 F.3d 1300 (1th Cir. 2011) .............................15
*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012)......................21
*Clem v. Corbeau*, 98 F. App'x 197 (4th Cir. 2004)...................................................31
*Creative Consumer Concepts, Inc. v. Kreisler*,
  563 F.3d 1070, 1075 (10th Cir. 2009) ...................................................... 11, 33
*Ellis v. J.R.'s Country Store, Inc.*, 779 F.3d 1184 (10th Cir. 2015) ........................26
*Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131 (10th Cir. 1994).........................23
*Hanson v. Camin Cargo Control, Inc.*, No. H-13-0027,
  2015 U.S. Dist. LEXIS 49896 (Apr. 16, 2015) ............................................ 27, 28
*Harber Air Serv. V. Reams*, 491 Fed. Appx. 875 (10th Cir. 2012) .........................32
*Herd,* No. 12-CV-0283-CVE-TLW, 2013 U.S. Dist. LEXIS 107823 ............. 32, 33
*Holway v. Negro League Baseball Museum*, 263 F. App'x 538
  (8th Cir. 2008)...........................................................................................31
*Lederman*. 685 F.3d 1151 (10th Cir. 2012) ............................................................21
*Mundell v. DBA/DMC Mining Svcs. Corp.*, No. 4:12-cv-2614,
  2014 U.S. Dist. LEXIS 182412 (M.D. Penn. Apr. 2, 2014)......................... 17, 19
*Newman v. Advanced Technology Innovation Corp.*,
  749 F.3d 33 (1st Cir. 2014)...................................................................................28
*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)................................................15
*Thiessen*, 267 F.3d at 1103 ......................................................................................36
*Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042
  (C.D. Cal 2006)..........................................................................................27
*William Lang Land Clearing, Inc. v. Administrator*,
  520 F. Supp. 2d 870 (E.D. Mich. 2007) ...........................................................26

## Statutes

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

29 U.S.C. § 207(a) ...............................................................................12

29 U.S.C. § 207(e) ......................................................................... 12, 21

29 U.S.C. § 207(e)(2).................................................................. 1, 12, 14

29 U.S.C. § 213(b)(1)..............................................................................2

## Regulations

29 C.F.R. §531.27 ................................................................................25

29 C.F.R. §531.29 ................................................................................25

29 C.F.R. §778.200 (2) ................................................................... 23, 24

29 C.F.R. §778.217 ..................................................................13, 14, 15, 16

29 C.F.R. §782.1 ....................................................................................2

## I. <u>Statement of Prior Related Appeals</u>

Pursuant to Rule 28.2(C)(1) of the Rules of Court for the United States Court of Appeals for the Tenth Circuit, counsel for appellee hereby notifies the Court that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court under the same or a similar title. Additionally, no cases are known to counsel to be pending in this or any other court that will directly affect this Court's decision in the pending appeal.

<u>s/ Laurence E. Stuart</u>
Laurence E. Stuart

## II.     Jurisdictional Statement

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiffs asserted claims under the laws of the United States.  The district court issued a final order disposing of Plaintiffs' claims on October 28, 2015.

## III.     Statement of the Issues Presented for Review

1.     Whether the district court properly granted summary judgment in favor of Defendant on Plaintiffs' wage claims under the Fair Labor Standards Act ("FLSA") based on its finding that the "hot shot" per diem payments at issue were properly excluded from regular rate calculations pursuant to 29 U.S.C. § 207(e)(2) ("Section 207(e)").

2.     Whether the district court properly denied Plaintiffs' request to find that Defendant waived all defenses other than the 29 U.S.C. § 207 (e)(2) regular rate exclusion as a matter of law.[1]

---

[1] Ordinarily Plaintiffs would have been required to file a motion to strike Defendant's affirmative defenses with the district court in order to address this particular issue; however, Magistrate Judge Lane Wilson permitted Plaintiffs to brief this particular issue in conjunction with the parties' competing summary judgment motions over Defendant's objections.  Supp. Appx. at 288-289 (August 18, 2015, Amended Liability Phase Scheduling Order).

# IV.   <u>Statement of the Case</u>

Plaintiff Sharp and Individuals who filed opt-in consents ("Opt-In Plaintiffs")(Collectively "Plaintiffs") are former hourly employees of Defendant who received per diem payments referred to as "hot shot" payments when they traveled and worked at remote job sites throughout the United States on Defendant's business.  Plaintiffs claim they are owed more overtime pay under the Fair Labor Standards Act ("FLSA") because Defendant did not include the "hot shot" per diem payments in regular rate calculations for purposes of determining their overtime compensation due during their employment.  However, because the "hot shot" per diem payments were reasonable payments for meal expenses incurred by Plaintiffs for Defendant's benefit and in furtherance of Defendant's interests, such payments were properly excluded from regular rate calculations under 29 U.S.C. § 207(e)(2), and the district court properly granted summary judgment in favor of Defendant.

Plaintiffs also asked the district court to hold that Defendant had waived all defenses other than the § 207(e)(2) regular rate exclusion as a matter of law. Specifically, Plaintiffs asserted that Defendant did not adequately raise additional defenses in its pleadings or discovery responses, including the applicability of the federal Motor Carrier Act exemption ("MCAE")[2].  However, as the district court

---

[2] 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.1.

correctly concluded, Defendant properly pled its affirmative defenses in its pleadings and did not waive them as a matter of law.  In addition to giving fair notice of the MCAE and other defenses in the Original Answer and Affirmative Defenses pleading it filed with the Court, Defendant had also repeatedly stated in pleadings and communications with Plaintiffs' counsel that it intended to raise the MCAE in this lawsuit.  The district court correctly concluded that Defendant did not waive its defenses as alleged by Plaintiffs.

For the reasons set forth below, Defendant requests that the Court affirm the decision of the district court.

### V.    <u>Statement of the Facts</u>

**A.    The Relevant Undisputed Facts.**

**1.    Plaintiff Dane Sharp**

The parties stipulated to the core facts relevant to the first issue before the Court.[3]  From approximately November 2010 through October 2014, Defendant employed Plaintiff Sharp to perform work in various capacities at remote work

---

[3] Appellants' Appendix ("Appx.") at 62-64 (Stipulation of Undisputed Facts).  Because Plaintiffs did not attempt to confer with Defendant regarding the content of the appendix or serve on Defendant a designation of the parts of the record they intended to include in the appendix in accordance with Federal Rule of Appellate Procedure 30, and because Defendant believes that the appendix filed by Plaintiffs with their Opening Brief omits items that should be included, Defendant files its supplemental appendix for consideration by the Court.  See Appellee's Supplemental Appendix, hereinafter referred to as "Supp. Appx."

locations throughout the United States assisting Defendant in the provision of seismic mapping services for its clients.[4]  Plaintiff Sharp's employment during that period was intermittent and his job positions and job duties varied by job.[5]  Vibe Operator, Truck Driver, and Helper were among the job positions held by Plaintiff Sharp during that period.[6]

During his employment with Defendant, Plaintiff Sharp's home was Tulsa, Oklahoma.[7]  The work Plaintiff Sharp performed for Defendant required him to travel to remote job sites throughout the United States and stay in hotels at or near job sites for approximately four to eight week periods, and then return home for approximately two to four week periods.[8]

### 2.    The Opt-In Plaintiffs

Defendant employed the Opt-in Plaintiffs to perform work in various capacities at remote work locations throughout the United States assisting Defendant in the provision of seismic mapping services for its clients.[9]  The Opt-In Plaintiffs performed a variety of job positions and job duties during their employment with Defendant.[10]

---

[4] Appx. at 62 (Stipulation of Undisputed Facts at ¶2).
[5] Appx. at 13 (Plaintiff's Original Complaint at ¶1).
[6] Appx. at 13 (Defendant's Original Answer and Affirmative Defenses at ¶1).
[7] Appx. at 67 (Defendant's Motion for Summary Judgment at n. 4).
[8] Appx. at 62 (Stipulation of Undisputed Facts at ¶3).
[9] Appx. at 62 (Stipulation of Undisputed Facts at ¶2).
[10] Appx. at 62 (Stipulation of Undisputed Facts at ¶2).

The parties agreed that the work the Opt-In Plaintiffs performed for Defendant required them to travel to remote job sites throughout the United States and stay in hotels at or near the job sites for approximately four to eight week periods, and then return to their home location for approximately two to four week periods.[11]

### 3.     The "Hot Shot" Per Diem Payments

As stipulated by the parties, during their employment, Defendant paid to Plaintiffs $35.00 "hot shot" per diem payments (1) each day they traveled from their respective home locations to remote job locations to perform work for Defendant, (2) each day they lived and worked at the remote job locations, and (3) each day they traveled from the remote job locations to their respective home locations.[12]   The parties agreed that Defendant paid the "hot shot" per diem payments to Plaintiffs to reimburse them for the reasonably approximate amount of meal expenses incurred by them when they were traveling away from their home locations in connection with their work for Defendant and when they were living and working at work locations away from their home locations in connection with their work for Defendant.[13]

---

[11] Appx. at 63 (Stipulation of Undisputed Facts at ¶5).
[12] Appx. at 62-64 (Stipulation of Undisputed Facts at ¶5, 7, 14, 15).
[13] Appx. at 62-64 (Stipulation of Undisputed Facts at ¶5, 7, 14, 15).

The parties stipulated that the amount of the "hot shot" per diem payments ($35.00 per day) was a reasonable amount for meal expenses incurred by Plaintiff Sharp and the Opt-In Plaintiffs as a result of living and working at work locations away from their home locations on Defendant's business.[14]  It was undisputed that Plaintiffs did not receive "hot shot" per diem payments upon returning to their respective home locations, nor did they receive "hot shot" per diem payments in any amount on days when they were performing work at remote job locations that had camps where food was provided.[15]

### 4.    Overtime Pay

Defendant employed Plaintiffs on an hourly basis.[16]  Plaintiffs worked in excess of forty (40) hours in many, if not most, workweeks during which they performed work for Defendant at remote work locations.[17]  Defendant paid Plaintiffs overtime at a rate of at least one and one half times their respective hourly rates.[18] Defendant did not include the "hot shot" per diem payments paid to Plaintiffs in the regular rate calculations for purposes of computing overtime pay due.[19]

---

[14] Appx. at 64 (Stipulation of Undisputed Facts at ¶15).
[15] Appx. at 63 (Stipulation of Undisputed Facts at ¶7).
[16] Appx. at 62 (Stipulation of Undisputed Facts at ¶4).
[17] Appx. at 63 (Stipulation of Undisputed Facts at ¶8).
[18] Appx. at 63 (Stipulation of Undisputed Facts at ¶9).
[19] Appx. at 63 (Stipulation of Undisputed Facts at ¶10).

**B.     Relevant Procedural History of the Case.**

Plaintiff Sharp filed this lawsuit seeking allegedly unpaid overtime wages he claims are due in connection with "hot shot" payments he and others received during their employment at CGG Land.[20]  On November 8, 2014, Plaintiff Sharp filed a Motion for Conditional Certification of a Collective Action, which Defendant opposed.[21]  On January 14, 2015, the district court conditionally certified a collective action consisting of the following class:

> All of Defendant's current and former hourly non-exempt employees who were entitled to be paid overtime premiums under the FLSA and who received at least one cash "hot shot" payment in the three years (plus twenty-one days) preceding January 14, 2015.[22]

Following conditional certification, a total of 226 individuals executed consents to join this lawsuit as opt-in plaintiffs.[23]

On April 2, 2015, Defendant served written discovery directed at all opt-in Plaintiffs which sought information related to the certification issues as well as Defendant's affirmative defenses, among other legal and factual issues.[24]  When Plaintiffs' counsel indicated his clients would not answer any discovery directed or pertaining to any of the opt-in Plaintiffs, Defendant sought a conference with the

---

[20] Appx. 13-15a (Plaintiff's Original Complaint).
[21] Supp. Appx. at 1-20, 21-94).
[22] Supp. Appx. at 106-120 (January 14, 2015 Opinion and Order).
[23] Appx. at 1-12 (Civil Docket Sheet at entries 38-40, 43-45).
[24] Supp. Appx. at 185-205 (Plaintiff's Response in Opposition to Opposed Motion to Extend Liability Phase Deadlines).

district court to discuss the parameters of permissible discovery in this lawsuit.[25]

Defendant's request for a telephone conference with the district court was granted

and occurred on May 1, 2015, before the district court magistrate judge.[26]

During the May 1, 2015 telephone conference before the magistrate judge, the

parties and the court discussed the possibility of obtaining agreed stipulations

regarding (1) the purpose of the "hot shot" payments and (2) the reasonableness of

the amount of the "hot shot" payments so the parties could suspend all discovery and

motions deadlines and proceed with filing cross-motions for summary judgment on

the following single legal issue:

> Whether the "hot shot" per diem payments at issue in this case were required
> to be included in the regular rate calculation for purposes of determining
> overtime premiums due under the Fair Labor Standards Act.[27]

(The "Central Legal Issue.")    On July 16, 2015, Defendant filed the parties'

Stipulation of Undisputed Facts with the district court, which sets forth undisputed

facts that the parties represented were sufficient to allow the district court to rule on

this issue without the need for additional evidence or discovery.[28]

---

[25] Supp. Appx. at 122-123, 160-167 (Opposed Motion for Extension of the Liability Phase
Deadlines at 2-3; Defendant's Opposed Request for Status Conference Regarding
Discovery Matters).
[26] Supp. Appx. at 206.
[27] *See* Supp. Appx. at 207, 229 (May 4, 2015 Minute Order; Defendant's Reply in Support
of its Proposed Second Amended Liability Phase Scheduling Order at 2).
[28] Appx. at 62-64.

8

On August 18, 2015, the district court issued an Amended Liability Phase Scheduling Order setting a deadline of September 11, 2015 for the parties to file dispositive motions on the following two legal issues: "(1) whether or not the "hot shot" payments should have been included in the calculation of an employee's regular rate of pay in the absence of a statutory exception; and (2) whether or not defendant has waived any defenses as a matter of law."[29]  The district court's August 18, 2015 order directed that "the Court will conduct a scheduling conference on January 14, 2016 at 2:00 p.m. in Courtroom 2, to address any remaining discovery issues and for the purpose of establishing a final Scheduling Order in this case."  The district court further directed the parties not to "conduct any further discovery absent leave of Court, and no motions to amend or join shall be filed absent leave of Court."

On September 11, 2015, Plaintiffs moved for partial summary judgment on the Central Legal Issue and also requested that the district court find that Defendant waived all defenses other than the 29 U.S.C. § 207 (e)(2) regular rate exclusion as a matter of law.[30]

---

[29] Supp. Appx. at 288-289 (Amended Liability Phase Scheduling Order).
[30] Appx. at 88-134.

9

On September 11, 2015, Defendant moved for summary judgment on the Central Legal Issue.[31]  The parties filed their respective responses and replies to the motions for summary judgment.[32]

On October 19, 2015, the district court issued an opinion and order granting Defendant's Motion for Summary Judgment, denying Plaintiffs' Motion for Summary Judgment, and finding that Defendant had not waived any of its affirmative defenses as a matter of law.[33]

### VI.     <u>Summary of Argument</u>

The district court's determination that Defendant properly excluded the "hot shot" per diem payments from regular rate calculations under Section 207(e) should be affirmed in its entirety because the relevant legal authority clearly establishes that the "hot shot" per diem payments fall within Section 207(e)'s exclusions from the regular rate, and Plaintiffs have failed to provide any legal or factual basis for their contrary and unprecedented interpretation of Section 207(e).

In addition, the district court's determination that Defendant did not waive its affirmative defenses (including the Motor Carrier Act Exemption) should also be

---

[31] Appx. at 66-87; Supp. Appx. at 291-333.
[32] Appx. at 135-186.
[33] Appx. at 187-200.

affirmed because the record clearly shows that Defendant provided the requisite notice of such defenses in accordance with Rule 8(c) and applicable case law.

## VII.  Standards of Review

The Court reviews the district court's grant of summary judgment *de novo*, applying the same legal standards to be used by the district court.  *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).

The district court's ruling that Defendant did not waive affirmative defenses is a mixed question of law and fact which requires the Court to accept the district court's factual conclusions unless clearly erroneous but review the application of the facts to the law under a *de novo* standard. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1075 (10th Cir. 2009).

## VIII.  Argument and Authorities

## A.    The District Court's Decisions Were Proper and Plaintiffs Have Failed to Demonstrate Otherwise.

Plaintiffs' request to reverse the district court's rulings should be denied in its entirety because (1) the relevant authority cited by both Defendant and the district court clearly establishes that the "hot shot" per diem payments fall within Section 207(e)'s exclusions from the regular rate; (2) Plaintiffs have failed to provide any legal or factual basis for their proffered interpretation of Section 207(e) or their claim that Defendant waived affirmative defenses.

1.    **The District Court Correctly Determined that the "Hot Shot" Payments Fit Within the FLSA's Regular Rate Exclusions.**

As the district court correctly held, the relevant case law and guidance from the Department of Labor ("DOL") support the court's determination that Defendant properly excluded the "hot shot" payments from the regular rate calculation pursuant to 29 U.S.C. § 207(e)(2).

a.    **The Fair Labor Standards Act Excludes Travel Expenses From the Regular Rate Calculation.**

The FLSA generally requires covered employers to pay their employees overtime pay for work in excess of forty hours a week at a rate of one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207(a). "The regular rate includes all remuneration for employment paid to, or on behalf of, the employee," with certain specified exceptions. *Id.* at § 207(e). Among these specified exceptions is one excluding from the regular rate calculations "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." *Id.* at § 207(e)(2). The circumstances under which this particular exception applies are further explained in the FLSA regulations, as follows:

    (a)    General Rule. Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217.   The FLSA regulations further provide a list of specific examples of permissible reimbursements that are "intended to be illustrative rather than exhaustive," and include among them "[t]he actual or reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business." *Id.*

        **b.**    **The "Hot Shot" Per Diem Payments Were Reasonable Approximations of Meal Expenses Incurred by Plaintiffs While Away From Home on Defendant's Business.**

The undisputed facts in this case establish that the "hot shot" per diem payments were reasonable approximations of meal expenses incurred by Plaintiffs while away from their home locations on Defendant's business.  Specifically, the Stipulation of Undisputed Facts executed by the parties and filed with the district court establishes the following material facts:

- Defendant paid the "hot shot" per diem payments to Plaintiffs to cover meal expenses incurred by them only on days when (1) they were

13

engaged in travel to and from their home locations and remote job sites on Defendant's business and (2) they were living in hotels at remote job sites on Defendant's business; and

- the amount of the "hot shot" per diem payments ($35.00 per day) was reasonable.[34]

Because these material facts are not in dispute, the only issue before the district court was whether such payments were properly excludable from the regular rate calculation under one of the exceptions enumerated in the FLSA regulations.

### c.    The "Hot Shot" Per Diem Payments Were Excludable From the Regular Rate Under Section 207(e)(2) of the FLSA Because the Meal Expenses Incurred Were For Defendant's Benefit and in Furtherance of Defendant's Interests.

Defendant properly excluded the "hot shot" per diem payments from Plaintiffs' regular rate calculations under section 207(e)(2) of the FLSA because the meal expenses that Plaintiffs incurred while they were "away from home" were for Defendant's benefit and in furtherance of Defendant's interests.

As discussed above, the FLSA permits employers to exclude certain types of payments from the regular rate calculation in determining overtime payments due, including reimbursements for expenses incurred by employees for the benefit of the employer or by reason of action taken for the convenience of the employer. 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217.  Such excludable payments are permitted

---

[34] Appx. at 62-64 (Stipulation of Undisputed Facts at 5, 7, 14, 15).

14

to be in the form of actual reimbursements for such expenses incurred or payments that are a reasonable approximation of such expenses. *Id.* § 778.217. Per diem payments that reasonably approximate the amount expended by an employee, "who is traveling 'over the road' on his employer's business, for . . . living expenses away from home" are specifically excluded from the regular rate under the FLSA regulations. *Id.*

The DOL and courts interpreting the FLSA have found per diem payments made for meal expenses incurred by employees who are working away from their home locations on employer business to be excludable from the regular rate calculation for purposes of computing overtime pay due.[35] In a May 13, 2004 opinion letter, the DOL specifically found the term "living expenses" referenced in 29 U.S.C. § 778.217 to include the cost of food and the necessity of eating meals away from home. Wage and Hour Division Opinion Letter, FLSA 2004-3 (May 13, 2004) ("Certainly the phrase **'living expenses' includes the cost of food, and the necessity of eating meals away from home as an additional expense that the employee incurs for the employer's benefit"**)(*emphasis added*).[36] In addition, the

---

[35] *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations, and opinions of the [DOL], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informal judgment to which courts and litigants may properly resort for guidance"); *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 (1th Cir. 2011).

[36] Appx. at 86 (Defendant's Motion for Summary Judgment at Ex. B at 1).

15

DOL's Field Operations Handbook provides a similar interpretation of this exclusion. DOL Field Operations Handbook 30c03 ("Meals furnished by the employer are regarded as primarily for the benefit and convenience of the employee. **This rule does not apply, however, to the meal expenses incurred by an employee while traveling away from home on the employer's business")**(*emphasis added*).[37]

The costs of meals while working away from home are for the employer's benefit and in furtherance of the employer's interests – the employee would not incur them but for his/her provision of services away from home. The Fifth Circuit Court of Appeals and the Eight Circuit Court of Appeals (as well as district courts in Pennsylvania and Texas) have specifically found per diem payments covering meal expenses incurred by employees who performed work away from their home locations to be for the employer's benefit and within Section 207(e)(2)'s exclusion from the FLSA's regular rate calculation. *See Berry v. Excel Group, Inc.*, 288 F.3d 252 (5th Cir. 2002) (holding that a per diem of $150 per week was not a part of the employee's regular rate of pay where the employee's temporary work site was located 100 miles from his home and the employee was expected to incur expenses while at the work site for on-site living in a trailer, utilities, meals, and other daily

---

[37] Supp. Appx. at 307 (Defendant's Motion for Summary Judgment at Ex. C at 17).

16

charges); *Acton v. City of Columbia*, No. 03-4159-CV, 2004 U.S. Dist. LEXIS 19004 (W.D. Mo. Sept. 10, 2004) (unpublished), *aff'd* 436 F.3d 969 (8th Cir. 2006) (extending Section 207(e)(2)'s exclusion from the regular rate to a $12 meal allowance paid to firefighters who were unable to return home during their 24 hour shifts); *see also Mundell v. DBA/DMC Mining Svcs. Corp.*, No. 4:12-cv-2614, 2014 U.S. Dist. LEXIS 182412 (M.D. Penn. Apr. 2, 2014) (unpublished) (holding that a per diem of $75 per day was not required to be included in the regular rate calculation and noting the permissibility of employers setting an objectively reasonable rate for mileage, meals, or overnight lodging); *Brennan v. Padre Drilling Co., Inc.*, 359 F. Supp. 462 (S.D. Tex. 1973) (extending Section 207(e)(2)'s exclusion from the regular rate to per diem payments made to employees working on drilling rigs to reimburse them for expenses that included food).

In *Berry*, the defendant hired the plaintiff electrician with full knowledge that he lived 100 miles away from the job site.  288 F.3d at 254.  Instead of commuting home each day, the plaintiff chose to live near the work site in his travel trailer.  *Id*. The employer initially paid the plaintiff a per diem of $100 per week and then later increased the per diem amount to $150 per week.  *Id*.  The court in *Berry* noted that the expenses the plaintiff incurred in connection with his decision to live in the travel trailer instead of commuting included rent on a lot to park his trailer, utilities, and meals.  *Id*.  In holding these expenses incurred were primarily for the employer's

17

benefit, the court noted the expenses were in addition to the plaintiffs' regular recurring household expenses at home where his family lived and where he maintained his primary residence. The court further noted "[t]he regulations sensibly authorize the employer to approximate such expenses as long as the amount of the per diem is not 'disproportionately large.'" *Id*.

Similarly, in *Acton*, the defendant had a per diem meal allowance program that paid the plaintiff firefighters a meal allowance advance of $12 per 24 hour shift they worked. No. 03-4159-CV, 2004 U.S. Dist. LEXIS 19004 *18 – 20. The plaintiffs were not required to submit receipts or keep track of their spending in order to receive the per diem payments. *Id*. at *4. In finding that the **meal expenses the plaintiffs incurred during the 24 hour shifts were "inherently for the convenience of [the defendant]" and were not personal expenses**, the district court noted that the plaintiffs were not allowed to return home during their 24 hour shifts unless there was an emergency and reasoned that they were "effectively 'away from home' even though they may physically remain in the same municipality or county as their home for the duration of the shifts." *Id*. at 19 (*emphasis added*). The court further noted that the meal allowance was "a supplementation which [was] needed because the employee [could] not prepare meals at home." *Id*. at * 19-20.

In the present case, Defendant required Plaintiffs to perform work away from their home locations for periods lasting up to eight weeks at a time in remote job

18

sites and paid them "hot shot" per diem payments in the amount of $35 per day during these periods. Plaintiffs lived in hotels near the job sites during these periods and incurred meal expenses during these periods in the amount of at least $35 per day.[38] The $35 per day "hot shot" per diem amount paid by Defendant was below the per diem rates set by the U.S. Government's General Services Administration (GSA) and IRS for meals and incidentals and, as stipulated by Plaintiffs, was a reasonable amount.[39] These "hot shot" per diem payments, like those at issue in *Berry* and *Acton*, were objectively reasonable approximations of meal expenses incurred by Plaintiffs for Defendant's benefit and fit squarely within the section 207(e)(2)'s exclusion from the regular rate calculation.

Because the "hot shot" per diem payments were properly excluded from the regular rate calculation under this exception, the district court correctly granted

---

[38] Appx. at 62-64 (Stipulation of Undisputed Facts at ¶3, 5, 14, 15).

[39] The GSA's per diem rate schedules allot a minimum of $46 per day for employee food costs and incidentals, depending on the locality (a minimum of $41 for meals and $5 for incidental expenses). *See* Supp. Appx. at 79-81 (Defendant's Response to Plaintiff's Motion for Collective Action at Exhibit C); *see also Mundell*, No. 4:12-cv-2614, 2014 U.S. Dist. LEXIS 182412 * 6-8. In finding that a *per diem* can be objectively reasonable without an exact determination of the plaintiff's actual expenses and a side-by-side comparison, the court in *Mundell* noted the absurdity and unworkability of requiring employers to anticipate a recipient employee's "unforeseen or even unreasonable steps to keep his or her actual costs low" such as "rid[ing] a bicycle rather than driv[ing], or eat[ing] only ramen noodles, or sleep[ing] in their car rather than a hotel, reducing actual expenses to nearly zero." *Id.* at * 8.

19

Defendant's motion for summary judgment and dismissed Plaintiffs' claims in their entirety.

> **2.     Plaintiffs' Opening Brief Misstates Applicable Legal Standards and Fails to Identify Any Legal Support For Plaintiffs' Interpretation of Section 207(e).**

In their Opening Brief, Plaintiffs misstate the applicable legal standards, provide no legal or factual support for their proffered interpretation of Section 207(e), and take positions that are both internally inconsistent and contrary to relevant authority.

> **a.     Plaintiffs' Opening Brief States Incorrect Legal Standards.**

Although Section 207(e) lists *exclusions* from the definition of "regular rate," Plaintiffs repeatedly refer to Section 207(e)(2) in their Opening Brief as an "*exemption*."[40]  As noted above, the only issue that was before the district court (and now before this Court on appeal) is whether the "hot shot" per diem payments are properly excludable from the regular rate for purposes of calculating overtime due — not whether Plaintiffs qualify for any of the possible statutory exemptions from overtime.[41]

Moreover, Plaintiffs' contention in their Opening Brief that "the employer bears the burden of showing that the employee fits 'plainly and unmistakenly within

---

[40] Plaintiffs' Opening Brief at 17-19.
[41] Supp. Appx. at 288-289 (August 18, 2015 Amended Liability Phase Scheduling Order).

20

the exemption's terms" is also inaccurate.[42]  As this Court clarified in *Lederman v.*

*Frontier Fire Protection, Inc.*, the preponderance of the evidence burden of proof

standard applies to employers seeking to prove an FLSA exemption and not the

heightened "plainly and unmistakably" burden referenced in cases pre-dating

*Lederman*. 685 F.3d 1151, 1158-59 (10th Cir. 2012).  Moreover, the U.S. Supreme

Court has further clarified that an exemption should not be construed narrowly

against the employer where the Court is interpreting a general definition that applies

throughout the FLSA.  *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct.

2156, 2172 (2012).  As this case clearly hinges on the definition of "regular rate,"[43]

Plaintiffs' Opening Brief misstates Defendant's burden and the standards for

statutory construction applicable in this case.[44]  However, regardless of which

standard is applied, the applicable regulations, case law, and DOL guidance clearly

demonstrate that the "hot shot" per diem payments at issue in this case were

excludable from regular rate calculations as a matter of law under any of the

standards.

---

[42] Plaintiffs' Opening Brief at 19.

[43] The exclusion at issue is contained in the provision of the FLSA defining "regular rate."
See 29 U.S.C. § 207(e) ("'**Regular rate' defined**").

[44] Plaintiffs' add further confusion to this particular issue by stating in Section B of their
Opening Brief that the excludability of the "hot shot" payments from the regular rate is not
actually an affirmative defense, but instead is "in the nature of a denial of Employees'
claims rather than an affirmative defense."  Plaintiffs' Opening Brief at 45.  Under this
theory, Defendant would not bear the burden of proving the applicability of this exclusion
from the regular rate.

21

### b.    Plaintiffs' Unprecedented and Unsupported Interpretation of the Term "Traveling."

In their Opening Brief, Plaintiffs put forth their novel theory that Section 207(e)(2)'s exclusion requires that employees perform work while in the act of traveling to be applicable.[45]  However, the FLSA imposes no such requirement, and Plaintiffs have not cited a single case or DOL opinion letter in which such a requirement was imposed or even discussed.  As the district court aptly noted, Plaintiffs' proffered interpretation "is a hyper-literal interpretation of the term 'traveling' and [P]laintiffs provide no applicable authority for such interpretation."[46]

Moreover, Plaintiffs have not referenced and cannot reference any evidentiary support for their contention that no work was performed on the days when Plaintiffs traveled from their respective home locations to the remote job sites and from remote job sites to their respective home locations.  Specifically, there is no record evidence to support the following assertions in Plaintiffs Opening Brief:

- "[The seismic mapping services] were performed exclusively after the Plaintiffs had arrived at the remote work sites."
- "On their Travel Days the Plaintiffs performed absolutely no work, they were merely traveling to or from a remote work site to work."
- "As previously discussed absolutely no work was done by these employees while 'traveling.'"[47]

---

[45] Plaintiffs' Opening Brief at 30-33.
[46] Appx. at 192.
[47] Plaintiffs' Opening Brief at 31-33.

22

There are no statements in the Stipulation of Undisputed Facts discussing what work was performed by the Plaintiffs before or during their travel time to the remote work locations or when "the seismic mapping services" were performed.[48] Plaintiffs made those assertions in direct contravention of the district court's August 18, 2015, order limiting the parties to the facts set forth in the Stipulation of Undisputed Facts, and without providing any evidentiary support for them. However, even *assuming arguendo* that Plaintiffs could provide evidentiary support for those statements, such statements were insufficient to create a genuine dispute of material facts that foreclosed summary judgment because Plaintiffs' argument would have failed as a matter of law. *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1134-35 (10th Cir. 1994) ("A 'material' fact is one 'that might affect the outcome of the suit under the governing law,' and a 'genuine' issue is where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party").[49]  Moreover, Plaintiffs' unsupported claim that they performed no work

---

[48] Appx. at 62-64 (Statement of Undisputed Facts).

[49] Plaintiffs' vague and fleeting reference in their Opening Brief to the Portal-to-Portal Act without any analysis or legal support is insufficient to establish that the time Plaintiffs spent traveling to the remote work sites was not compensable work time under the Portal-to-Portal Act.  Plaintiff's Opening Brief at 31.  More importantly, whether the travel time was compensable under the Portal-to-Portal Act has no bearing on the excludability of the travel *expenses* from the regular rate calculation.  *See also* 29 C.F.R. §778.200 (2) (excluding from the regular rate calculation "reasonable payments for traveling expenses incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation

23

during their travel days precludes an argument that that the "hot shot" per diems were paid to them as compensation for hours worked. If Plaintiffs were not working when they received the payments, the payments fit squarely within the regulation's exclusion for "other similar payments to an employee *which are not made for his hours of employment*."[50]

### c.  Plaintiffs' Claim That Meal Expenses Are Always For the Benefit of the Employee Has No Basis in Law.

While conceding in their Opening Brief that "proper travel meals may be excludable from the regular rate," Plaintiffs then inconsistently argue that meal expenses are always for the benefit of the employee and must be included in the regular rate calculations because of language in Section 3(m) of the FLSA providing "facilities" furnished by employers must be included in the regular rate calculations. [51] However, Section 3(m) does not apply to the "hot shot" per diem payments at issue in this case, and Plaintiffs' comparison of the "hot shot" per diem payments to facilities furnished by employers under Section 3(m) is misinformed and legally unsupported. Section 3(m) essentially permits employers to take a <u>credit</u> against wages due to employees for facilities the employer furnishes to the employee under

---

for his hours of employment"); see also Appx. at 192 (October 19, 2015 Opinion and Order at 6).
[50] 29 C.F.R. §778.200 (2) (emphasis added).
[51] Plaintiffs' Opening Brief at 29, 33-35.

certain circumstances. See 29 C.F.R. §531.27.  Because in those circumstances the

employer is permitted to treat as wages the cost of the facilities furnished, those

amounts must be included in the regular rate.  *Id*; *See also* Section 30c01(c) of the

DOL Field Operations Handbook.[52]   Section 3(m) is clearly inapplicable to the

present case because the "hot shot" per diem payments were cash payments made to

Plaintiffs, not facilities furnished.[53]  *See* 29 C.F.R. §531.29.[54]  Moreover, the FLSA

regulations interpreting Section 3(m) and the Department of Labor's Field

Operations Handbook specifically carve out reimbursements for "travel expenses"

(including meals) as being for the benefit or convenience of the employer — and,

thus, excludable from the regular rate calculation.  As stated in section 30c03 of the

DOL Field Operations Handbook:

> The crediting by an employer of facilities furnished to employees as wages
> will depend on whether such facilities are furnished primarily for the benefit
> or convenience of the employee, as determined by WH.  ***Where the primary
> benefit of such facilities is to the employer's business interest, credit will be
> denied.***  The following are commonly viewed as furnished primarily for the
> benefit or convenience of employees:
>
> > (1)   <u>Meals</u>
> >
> > Meals furnished by the employer are regarded primarily for the
> > benefit and convenience of the employees.  **This rule does not
> > apply, however, to meal expenses incurred by an employee**

---

[52] Supp. Appx. at 306 (Defendant's Motion for Summary Judgement at Ex. C at 16).

[53] Appx. at 63 (Statement of Undisputed Facts at ¶6).

[54] "Section 3(m) applies to both of the following situations: (a) where board, lodging, or other facilities are furnished in addition to a stipulated wage; and (b) where charges for board, lodging, or other facilities are deducted from a stipulated wage."

25

>
> **while traveling away from home on the employer's business.**
> (See IB 778.317(b)(3).)
>
> (2)    Lodging
>
> Lodging, like meals, is ordinarily considered for the benefit and convenience of the employee. **Circumstances may exist, however, where housing is of little benefit to employees, as where an employer requires an employee to live on the employer's premises to meet some need of the employer, or where the employee must travel away from home to further the employer's business. In such circumstances, the housing will be considered primarily for the benefit of the employer.** (Note: while it may be to the employer's advantage to provide such facilities at or near the worksite, courts have consistently taken the view that the employer may take a wage credit when the facilities are primarily for the benefit or convenience of the employee.)[55]

*See also William Lang Land Clearing, Inc. v. Administrator*, 520 F. Supp. 2d 870 (E.D. Mich. 2007).[56] Plaintiffs' argument that meal expenses are always for the benefit of the employee[57] clearly ignores the DOL's guidance on this issue and Section 207(e)(2) and cannot support a reversal of the district court decision. *See Ellis v. J.R.'s Country Store, Inc.*, 779 F.3d 1184, 1204-1205 (10th Cir. 2015)

---

[55] See Supp. Appx. at 307 (Defendant's Motion for Summary Judgement at Exhibit C at 17).

[56] In *William Lang Land Clearing, Inc.*, the Court affirmed the DOL Administrative Review Board's finding that employee lodging and food expenses paid by the employer while the employees were working away from home were undertaken for the employer's benefit because the employer could only perform its far distant contracts "if its employees incurred the substantial detriment of traveling to locales [sic] far from their homes for most of every work week." 520 F. Supp. 2d at 882.

[57] Plaintiffs' Opening Brief at 33.

26

(rejecting plaintiff's interpretation of the FLSA where it contravened another subpart of the regulation and noting that "limitations on a statute's reach are as much a part of the statutory purpose as specifications of what is to be done").

Having no case law or DOL opinion letters upon which to rely in support of their proffered interpretations of the FLSA, Plaintiffs spend the majority of their Opening Brief attempting to convince the Court to ignore relevant Fifth and Eighth Circuit precedent on this very issue because Plaintiffs' find the holdings in these cases to be "troubling" and "flawed and in error."[58]    Plaintiffs' subjective and unsupported opinion that all of these federal appellate courts simply got it wrong because their decisions go against Plaintiffs' novel interpretation of the FLSA is not a legal basis for reversing the district court's decision.

Apart from these allegedly "flawed" cases, Plaintiffs only cite to two cases in their Opening Brief that specifically pertain to meal expense reimbursements.[59] However, neither of those cases hold — or even state in *dicta* — that meal expenses are always for the employees' benefit or that they can never be excluded from the regular rate under Section 207(e)(2).  *See Wang v. Chinese Daily News, Inc*., 435 F. Supp. 2d 1042 (C.D. Cal 2006); *Hanson v. Camin Cargo Control, Inc.*, No. H-13-0027, 2015 U.S. Dist. LEXIS 49896 (Apr. 16, 2015) (unpublished).  *Wang* did not

---

[58] Plaintiffs' Opening Brief at 27, 40.
[59] Plaintiffs' Opening Brief at 37-38.

involve meal per diems paid to employees engaged in travel on employer business. Contrary to Plaintiffs' novel theory, the *Hanson* decision specifically recognized that the DOL regulations do not create a *per se* rule against reimbursement or payment for meals. *Id.* at *14 ("While neither *Gagnon* nor the DOL regulations create a *per se* rule against reimbursement for meals, the payment here is based only on hours and not actual expenses"). *Hanson* supports the proposition that employer meal expense per diems are properly excludable from the regular rate where they are reasonable approximations of expenses incurred and not tied to number of hours worked (as they were in *Hanson)*.[60] Because the "hot shot" per diem payments in the present case are reasonable approximations of meal expenses incurred and were paid based on a flat daily rate (not tied to number of hours worked), they are excludable from the regular rate under even the cases cited in Plaintiffs' Opening Brief.

> ### d.    There is No Factual Basis for Plaintiffs' Argument That "Hot Shot" Per Diem Payments Were Intended to Be Compensation.

Plaintiffs argue the "hot shot" per diem payments are actually compensation for hours worked disguised as meal expense reimbursements.[61] This argument is

---

[60] *See also Newman v. Advanced Technology Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014) (finding that the per diem payments in that case did not qualify for Section 207(e)'s exclusion from the regular rate because the per diem amounts were tied to the number of hours worked).

[61] Plaintiffs' Opening Brief at 35-38, 43-44.

particularly nonsensical and inappropriate in light of the Stipulation of Disputed Facts, which includes the following stipulations describing the nature of the "hot shot" per diem payments:

> • "The hot shot per diem payments paid by CGG Land to each of the Plaintiffs were for meal expenses the Plaintiffs incurred when they were traveling away from their home locations in connection with their work for CGG Land and when they were living and working at work locations away from their home locations in connection with their work for CGG Land."

> • "The parties agree that the amount of the hot shot payments ($35.00 per day) was a reasonable amount for meal expenses incurred by the Plaintiffs while living and working on CGG Land business at work locations away from their home locations."[62]

These stipulations definitively establish that the "hot shot" per diem payments were not intended to be compensation for hours worked. Plaintiffs stipulated that the "hot shot" per diem payments were for meal expenses incurred and now cannot, in good faith, seek to re-characterize them as compensation for hours worked in disguise. There is no factual or legal basis for Plaintiffs' assertion.

For the reasons set forth above, as well as those set forth in the district court's opinion and order, Defendant respectfully requests that the Court affirm the district court's grant of summary judgment in favor of Defendant.

---

[62] Appx. at 63-64 (Statement of Undisputed Facts at ¶¶14, 15).

29

**B.     Defendants Preserved Their Defenses, Including the MCAE.[63]**

In their Opening Brief, Plaintiffs claim  Defendant failed to preserve any defenses other than the travel expenses exclusion under Section 207(e)(2) because Plaintiffs allegedly had no notice of Defendant's affirmative defenses (including the Motor Carrier Act Exemption defense) for purposes of Fed. R. Civ. P. 8(c).[64] Plaintiffs argue Defendant failed to preserve its affirmative defenses because it did not specifically mention them by name in response to an interrogatory and because Defendant stated in its original answer that the named plaintiff (R. Dane Sharp) was "employed and paid as an hourly non-exempt employee for purposes of payment of overtime compensation under the Fair Labor Standards Act."[65]  Because none of the arguments presented by Plaintiffs are sufficient to establish that Defendant waived any of its affirmative defenses as a matter of law, Plaintiffs' request to reverse the district court's decision on this issue should be denied.

---

[63] To the extent that the Court affirms the district court decision on the Central Legal Issue, this second issue should be rendered moot.

[64] Plaintiffs' Opening Brief at 48-54.  Plaintiffs argued in their motion for summary judgment that Defendant did provide Plaintiffs with notice of the MCAE defense in its pleadings but somehow "abandoned any reliance on the exemption" by not mentioning the MCAE defense in response to an interrogatory, an argument rejected by the district court. Appx. at 115 (Plaintiffs' Motion for Summary Judgment at 28).  Plaintiffs have seemingly abandoned that particular argument in their appeal briefing.

[65] Plaintiffs' Opening Brief at 49, 51-54.

**1.    Defendant Provided the Requisite Notice of Its Affirmative Defenses In Accordance with Rule 8(c) and Applicable Case Law.**

Plaintiffs argue in their Opening Brief that although Defendant specifically pled overtime exemptions under section 13(a) and 13(b) of the FSLA in its Answer, the exemption contained in section 13(b)(1), commonly referred as the Motion Carrier Act Exemption (the "MCAE"), was waived under Federal Rule of Civil Procedure 8(c) because "CGG did not mention the MCAE by name, by statute subsection nor does the CGG Answer contain <u>any facts</u> that in any way would support such a defense or any other specific statutory exemption from overtime." [66] However, Plaintiffs fail to cite to a single case or other legal authority to support their assertion that Defendant's reference to section 13(b) of the FLSA was legally insufficient under Federal Rule of Civil Procedure 8(c).  Moreover, as the district court correctly reasoned in its decision in this case[67] and in *Baum v. Faith Technologies, Inc.*, "the nature of the defense may be inferred from factual allegations already made in the Complaint and Answer." *Baum v. Faith Technologies, Inc.,* No. 10-CV-0144-CVE-TLW, 2010 U.S. Dist. LEXIS 56704 *4 (N.D. Okla. June 9, 2010) (unpublished).[68]   Because Plaintiff Sharp's Original

---

[66] Plaintiffs' Opening Brief at 47.

[67] Appx. at 199.

[68] While this Court has never ruled on this particular issue, the district court's reasoning is in line with decisions issued by other federal appeals courts on this issue.  *See Holway v. Negro League Baseball Museum*, 263 F. App'x 538, 538 (8th Cir. 2008); *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004).

31

Complaint in this case specifically alleged he "had been employed by CGG in a number of positions, including **_truck driver and vibe operator_**," it was at least inferred that the MCAE — the overtime exemption that specifically applies to truck drivers — is the applicable overtime exemption contained in 13(b) of the FLSA and pled in Defendant's Answer.[69] (Emphasis added.)

Even if a defendant has failed to assert an affirmative defense in its Answer (which is not the case here), case law dictates that the defendant be permitted to amend its Answer to include the affirmative defense where the plaintiff had notice that the affirmative defense may be raised at trial.  See _Harber Air Serv. V. Reams_, 491 Fed. Appx. 875, 884 (10th Cir. 2012) ("a district court may allow the party to 'constructively amend [its] answer' such as by raising an affirmative defense in a motion for summary judgment"); _Ball  Corp. v. Xidex Corp._, 967 F.2d 1440, 1444 (10th Cir. 1992) (finding that defendant did not waive an affirmative defense that was raised for the first time in the defendant's motion for summary judgment); _see also Herd v. City of Tulsa_, No. 12-CV-0283-CVE-TLW, 2013 U.S. Dist. LEXIS 107823 *8 (N.D. Okla. Aug. 1, 2013) (unpublished) (granting the defendant leave to amend

---

[69] Additionally, the fact that Plaintiff Sharp failed to identify in his Original Complaint all of the job positions he and the alleged similarly situated individuals held during their employment with Defendant left open the possibility that other overtime exemptions could apply.

32

its answer and discovery responses to add a defense of failure to mitigate because Plaintiff had notice that the Defendant would raise the defense and, therefore, would not be prejudiced by the amendment). "Although it is preferable for a party to raise an affirmative defense earlier, courts should 'avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule.'" *Id*. at *8; *Creative Consumer Concepts, Inc. v. Kreisler,* 563 F.3d 1070, 1076 (10th Cir. 2009) (quotation omitted). "Rule 8(c)'s ultimate purpose is 'simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with *Rule 8(c)* does not cause the plaintiff any prejudice.'" *Creative Consumer Concepts,* 563 F.3d at 1076 (quoting *Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (10th Cir. 1988))*; Herd,* No. 12-CV-0283-CVE-TLW, 2013 U.S. Dist. LEXIS 107823 at *8.

As Plaintiffs acknowledged in their motion for summary judgment,[70] Defendant specifically raised the MCAE defense in its Response to Plaintiff's Motion for Conditional Certification which was filed with the Court on December 22, 2014.[71] Defendant also served discovery requests on Plaintiffs related to this

---

[70] Appx. at 115 (Plaintiffs' Motion for Summary Judgment at 28).

[71] Supp. Appx. at 26. Plaintiff Sharp even responded to Defendant's argument regarding the exemption in the Reply he filed in support of his Motion to Certify, making the uninformed argument that the mere fact that Defendant paid Plaintiff Sharp overtime wages

defense, which Plaintiffs later sought to ridicule in their Response to Defendant's Opposed Motion for Extension of Liability Phase Deadlines filed with the district court as being irrelevant.[72]   Defendant again stated its intent to raise the MCAE defense in Defendant's Opposed Request for Status Conference with the Court Regarding Discovery Matters filed with the Court on April 24, 2015.[73]   In that particular pleading, Defendant sought assistance from the Court in obtaining discovery from the Opt-In Plaintiffs regarding "the extent to which they performed job duties and/or worked in foreign locations during the relevant period sufficient to bring them within one of the FLSA's exemptions from overtime requirements" and specifically noted that "[d]epending on the specific circumstances, some or all of these individuals may have performed work that exempted them from overtime pay under the Motor Carrier Act Exemption."[74]   Moreover, Plaintiffs acknowledge in their Opening Brief that "[d]uring a hearing [on] August 12, 2015 CGG made it clear that it intended to attempt to utilize what is clearly an affirmative defense commonly

---

during his employment meant that he was legally entitled to overtime under the FLSA. Supp. Appx. at 102.  A misunderstanding of the law does not constitute unfair surprise.

[72] See Supp. Appx. at 176 (Plaintiffs' Response to Defendant's Opposed Motion for Extension of Liability Phase Deadlines at 9) ("In any regard what does it matter for the purposes of the liability phase what position was held, for what time and the job duties performed by each of the 225 opt-in Plaintiffs? Each of the Plaintiffs to have been eligible for the class was a recent former CGG hourly employee that received cash hot shot payments and worked overtime.  Those are the only relevant factors").

[73] Supp. Appx. at 163-164 (Defendant's Opposed Request for Status Conference with the Court Regarding Discovery Matters at 4-5).

[74] Id.

34

known as the Motor Carrier Act Exemption (the 'MCAE') to both avoid liability and in support of a future motion for decertification of the collective action."[75]  Plaintiffs clearly had sufficient notice that Defendant intended to assert the MCAE defense. For Plaintiffs to claim unfair surprise was simply disingenuous and unsupported by the record in this case – especially where the district court suspended discovery until it had decided the Central Legal Issue (excludability of the per diems from regular rate calculations).  Had Plaintiffs' claims survived summary judgment, both parties would have had ample opportunity to conduct discovery on Defendant's defenses (including the MCAE defense) and decertification issues.  Because Defendant sufficiently raised the MCAE defense and the other defenses clearly stated in its Answer in accordance with Federal Rule of Civil Procedure 8(c) and applicable case law, Defendant did not waive any such defenses and the district court properly ruled in favor of Defendant on this issue.

    **2.**    **Plaintiffs' Remaining Arguments Did Not and Do Not Support Their Requested Waiver Finding.**

In their Opening Brief, Plaintiffs complain, as they did in the district court, that they were prejudiced by having to send the Court-approved opt-in consent forms

---

[75] Plaintiffs' Opening Brief at 45.  See also Supp. Appx. at 242-243 (Defendant's Reply in Support of Defendant's Proposed Second Amended Liability Phase Scheduling Order at Exhibit C at ¶ 4) (recounting the July 24, 2015, discussion between the parties' counsel regarding the Defendant's intent to assert the MCAE); Supp. Appx. at 213 (Plaintiffs' Response Brief in Opposition to Defendant's Proposed Second Amended Scheduling Order at 2).

to over 1300 potential opt-in plaintiffs and that they were harmed by the fact that Defendant's response to Interrogatory No. 4 did not specifically mention the MCAE or other affirmative defenses by name.[76]

Plaintiffs' complaint about the size of the potential class is a problem of their own creation. Plaintiff Sharp sought conditional certification of the broadest possible class without regard to job position or work location.[77] In Defendant's Response to Plaintiff's Motion to Certify, Defendant opposed the collective action certification, complaining that Plaintiff Sharp had sought a nationwide class of individuals regardless of job duties, work locations, and circumstances, without even providing basic information about his own job duties, work locations, or circumstances, and specifically raising the MCAE defense as to Plaintiff Sharp.[78] In granting Plaintiff Sharp's request for conditional certification of the broad class, the district court indicated that this defense was an issue that should be raised during the decertification stage.[79] Given the district court's order, Defendant had no authority

---

[76] Plaintiffs' Opening Brief at 51.

[77] Supp. Appx. at 2 (Plaintiff Sharp's Motion to Certify at 2).

[78] Supp. Appx. at 26 (Defendant's Response in Opposition to Motion to Certify at 6).

[79] See Supp. Appx. at 112 (January 14, 2015 Opinion and Order at 7) ("While each of these arguments deserves consideration, each belongs at the second stage of certification, not the first. *See Thiessen*, 267 F.3d at 1103 (noting that at the second stage a court should consider the '(1) disparate factual and employment settings of the individual plaintiffs; [and] (2) the various defenses available to defendant which appear to be individual to each plaintiff')."

to remove from the list of putative collective action members individuals to whom the MCAE defense may have applied (including Plaintiff Sharp).

Plaintiffs' argument that Defendant failed to preserve the MCAE defense by not specifically referencing it by name in response to Plaintiffs' Interrogatory No. 4 is similarly absurd.[80]  Not only do Plaintiffs fail to provide any legal authority for this argument, they also appear to misapprehend the nature of their interrogatory. Specifically, Plaintiffs complain in their Opening Brief that Defendant did not "mention any 213(a) or 213(b) exemptions whatsoever or any of the numerous affirmative defenses it listed in its CGG Answer" in its response to Interrogatory No. 4.[81]  However, Interrogatory No. 4 did not call for Defendant to identify its legal theories or affirmative defenses.[82]  Moreover, in its response to that interrogatory, Defendant clearly limited its response to "basic facts supporting its claims and defenses."[83]  Defendant was under no obligation to specifically identify the MCAE or any other affirmative defense in response to Interrogatory No. 4 and Plaintiffs never moved to compel Defendant to do so.  In addition, Defendant's ability to volunteer specific information relating to the applicability of the MCAE defense was hindered by Plaintiffs' clear refusal to provide any discovery pertaining to any of the

---

[80] Plaintiffs' Opening Brief at 53.
[81] *Id*. at 53.
[82] *Id*. at 52-53.
[83] *Id*.

226 opt-in Plaintiffs (despite Defendant's repeated requests).  Indeed, these discovery disputes between the parties are what further prompted them to request that the district court consider the foundational issue of whether the "hot shot" payments were required to be included in overtime payments as a matter of law prior to proceeding with additional discovery.[84]

The district court considered the arguments raised by Plaintiffs in light of the record before it and properly concluded that Defendant did not waive its defenses. Because Plaintiffs have again failed to show that Defendant waived any of its affirmative defenses as a matter of law, Plaintiffs' Motion should be denied in its entirety.

---

[84] As the record clearly shows, Plaintiffs did not produce a single document in discovery nor did they provide complete answers to any discovery served upon them.  When Defendants realized that Plaintiffs were going to take the unreasonable position that no additional discovery would be permitted in the case even after the district court had decided the excludability issue, Defendant moved to compel responses to the outstanding discovery it had timely served on Plaintiffs. The district court denied Defendant's Motion to Compel and issued the Amended Liability Phase Scheduling Order in which it suspended all further discovery and set a scheduling conference for January 14, 2016, "to address any remaining discovery issues and for the purpose of establishing a final Scheduling Order in the case." Supp. Appx. at 288-289.  The district court's order granting summary judgment in favor of Defendant rendered further discovery moot.

## IX.  Conclusion.

In light of the foregoing, Appellee respectfully submits that the district court decision should be affirmed in its entirety.

Respectfully submitted,

s/ Laurence E. Stuart
Laurence E. Stuart, Texas Bar No. 00794705
Hollie L. Reiminger, Texas Bar No. 24060559
**STUART PC**
712 Main, Suite 1100
Houston, Texas  77002
Telephone: 713.337.3750
Facsimile:  713.481.6320
lstuart@stuartpc.com
hreiminger@stuartpc.com

**ATTORNEYS FOR APPELLEE**
**CGG LAND (U.S.) INC.**

Date: February 12, 2016

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,705 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type of styles requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point Times New Roman.

I relied on my word processor to obtain the count and it is Word for Windows. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Date: February 12, 2016

s/ Laurence E. Stuart
Laurence E. Stuart

40

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I hereby certify that with respect to the foregoing:

1. All required privacy redactions have been made per 10 Cir. R. 25.5;

2. If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3. The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, VIPRE antivirus, updated January 7, 2016, and according to the program, is free of viruses.

Date: February 12, 2016

<u>s/ Laurence E. Stuart</u>
Laurence E. Stuart

41

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2016, I electronically filed the foregoing using the court's CM/ECF system, which will send notifications of such filing to the following:

Mr. J. Vince Hightower
410 West 7th Street, #1125
Tulsa, Oklahoma 74119
Email: Jvh255@aol.com

s/ Laurence E. Stuart
Laurence E. Stuart